**No. 12-20296**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

ROBERT R. TOLAN; MARIAN TOLAN,

Plaintiffs-Appellants,

v.

JEFFREY WAYNE COTTON,

Defendant-Appellee.

On Appeal from the United States District Court
for the Southern District of Texas, Houston Division

**APPELLANT ROBERT R. TOLAN'S
PETITION FOR REHEARING EN BANC**

Martin J. Siegel
LAW OFFICES OF
    MARTIN J. SIEGEL, P.C.
Bank of America Center
700 Louisiana Street, Suite 2300
Houston, Texas 77002
Telephone: (713) 226-8566

*Attorney for Appellant-
Petitioner Robert R. Tolan*

No. 12-20296

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

ROBERT R. TOLAN; MARIAN TOLAN,

Plaintiffs-Appellants,

v.

JEFFREY WAYNE COTTON,

Defendant-Appellee.

---

CERTIFICATE OF INTERESTED PERSONS

---

The undersigned counsel of record certifies that the following listed persons and entities described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

**Current and Former Plaintiffs and Appellants:**

Robert R. Tolan, Bobby Tolan, Marian Tolan, Anthony Cooper

**Trial and/or Appellate Counsel for Plaintiffs and Appellants**:

Geoffrey Berg
David Berg
BERG & ANDROPHY
3704 Travis Street
Houston, Texas 77002

George R. Gibson
Marvin Nathan
NATHAN SOMMERS JACOBS
2800 Post Oak Boulevard
Houston, Texas 77056

Martin J. Siegel
LAW OFFICES OF MARTIN J. SIEGEL
Bank of America Center
700 Louisiana Street, Suite 2300
Houston, Texas 77002

**Current and Former Defendants and Appellees**:

Jeffrey Wayne Cotton, John C. Edwards, Randall C. Mack, Byron Holloway
Cynthia Siegel, Bernard Satterwhite, City of Bellaire, Bellaire Police Department

**Trial and Appellate Counsel for Defendants and Appellees**:

William S. Helfand
Norman Ray Giles
Chamberlain, Hrdlicka, White, Williams & Aughtry
1200 Smith Street, Suite 1400
Houston, TX 77002

*Martin J. Siegel          /s/*
Martin J. Siegel
*Attorney of Record for*
*Plaintiffs-Appellants*

## <u>RULE 35(b)(1) STATEMENT REGARDING EN BANC REVIEW</u>

Is it objectively reasonable as a matter of law for a police officer to shoot someone for nothing more than disobeying a command to lie down, starting to stand, getting to his knees, and saying "get your fucking hands off my mom?" There were other circumstances: it was 2:00 a.m.; the person shot, Robbie Tolan, was suspected of car theft (wrongly as it turned out); the "mom" in question was not fully cooperating with officers. Still, all Robbie did was start to rise and make the challenging statement.

Robbie sued the officer, Jeffrey Cotton, for using excessive force in violation of the Fourth Amendment, and a panel of this Court affirmed the district court's grant of summary judgment based on qualified immunity. The Court should now consider the case en banc for two reasons.

First, the panel's opinion conflicts sharply with the other decisions of this circuit upholding the use of deadly force. *See infra*. at 4 n. 1 (citing decisions), FED. R. APP. P. 35(a)(1), (b)(1)(A). While these cases vary factually, all involved suspects who did something open and direct to threaten imminent and serious harm to the officers or bystanders. The suspects all brandished or appeared to be reaching for weapons, drove cars at officers, or fought with them. There is no decision remotely similar to this one, where a suspect merely started to stand and said something aggressive. The panel's opinion defines dangerousness down and,

as a result, undermines the consistency of this Court's Fourth Amendment jurisprudence.

Second, the opinion plainly contradicts *Saucier v. Katz*, 533 U.S. 194, 203-05 (2001), *as modified by Pearson v. Callahan*, 555 U.S. 223 (2009), and the law of other circuits applying *Saucier*. *See* FED. R. APP. P. 35(b)(1). The first prong of qualified immunity asks whether the officer violated the plaintiff's rights, while the second asks whether the law governing the officer's conduct was clearly established. The panel skips the first prong and proceeds to the second, as *Pearson* permits, but in doing this it holds that Cotton was objectively reasonable in shooting Robbie – that is, that Cotton made what the panel calls a reasonable "mistake of fact" by viewing Robbie as more dangerous than he actually was. Analyzing officers' factual reasonableness under the second prong this way contravenes *Saucier*, which instructs that it be considered in assessing the first prong and deciding if a violation occurred. Why does this matter? In addition to flouting *Saucier*, the panel's approach, based on pre-*Saucier* case law, adds to confusion already present in this circuit on this subject, squarely conflicts with the post-*Saucier* law in other circuits, compromises the vital role of juries in deciding when deadly force is reasonable, and frustrates the development of Fourth Amendment law. En banc review should be granted to avert these consequences.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS..................................................i

RULE 35(b)(1) STATEMENT REGARDING EN BANC REVIEW ................................... iii

TABLE OF CONTENTS .........................................................v

TABLE OF AUTHORITIES .........................................................vi

STATEMENT OF THE ISSUES MERITING EN BANC CONSIDERATION............................1

COURSE OF PROCEEDINGS AND DISPOSITION OF THE CASE .......................................1

STATEMENT OF FACTS .........................................................1

ARGUMENT.........................................................3

    I.    The Opinion Departs From Circuit Precedent and
        Drastically Lowers the Threat Level Necessary to
        Justify Deadly Force..........................................................3

    II.    The Panel's Misapplication of Qualified Immunity
        Contravenes Supreme Court Precedent and the Decisions
        of Other Circuits..........................................................8

CONCLUSION .........................................................15

CERTIFICATE OF SERVICE .........................................................16

## TABLE OF AUTHORITIES

**Cases**                                                                **page:**

*Abraham v. Raso*,
    183 F.3d 279 (3d Cir. 1999) ................................................................ 14

*Ashcroft v. Al-Kidd*,
    131 S. Ct. 2074 (2011) ...................................................................... 10

*Aujla v. Hinds County*,
    61 Fed. Appx. 917, 2003 WL 1098839 (5th Cir. 2003) ........................ 4

*Bacque v. Leger*,
    207 Fed. Appx. 374, 2006 WL 3253611 (5th Cir. 2006) ...................... 7

*Baker v. Putnal*,
    75 F.3d 190 (5th Cir. 1996) .................................................................. 7

*Ballard v. Burton*,
    444 F.3d 391 (5th Cir. 2006) ................................................................ 4

*Bazan v. Hidalgo County*,
    246 F.3d 481 (5th Cir. 2001) ................................................................ 7

*Brown v. Faison*,
    2005 WL 473681 (N.D. Tex. 2005) .................................................... 13

*Camreta v. Greene*,
    131 S.Ct. 2020 (2011) ........................................................................ 15

*Carnaby v. City of Houston*,
    636 F.3d 183 (5th Cir. 2011) ................................................................ 4

*Colston v. Barnhart*,
    130 F.3d 96 (5th Cir. 1997), *cert. denied*, 525 U.S. 1054 (1998) ........ 5

*Cowan v. Breen*,
    352 F.3d 756 (2d Cir. 2003) ................................................................ 14

*Crawford-El v. Britton*,
    523 U.S. 574 (1998)................................................................12, 15

*Curley v. Klem*,
    499 F.3d 199 (3d Cir. 2007)......................................................14

*Denstel v. City of McComb*,
    50 F.3d 1032, 1995 WL 136133 (5th Cir. 1995) ....................................4

*Elizondo v. Green*,
    671 F.3d 506 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 409 (2012)........................4

*Estate of Escobedo v. Bender*,
    600 F.3d 770 (7th Cir. 2010), *cert. denied*, 131 S. Ct. 463 (2010).....................13

*Flatt v. City of Lancaster*,
    273 F.3d 392, 2001 WL 1012952 (5th Cir. 2001)....................................4

*Flores v. Palacios*,
    381 F.3d 391 (5th Cir. 2004)......................................................8

*Fraire v. City of Arlington*,
    957 F.2d 1268 (5th Cir. 1992), *cert. denied*, 506 U.S. 973 (1992)........................5

*Gilbert v. French*,
    364 Fed. Appx. 76, 2010 WL 445456 (5th Cir. 2010) ...........................................4

*Gould v. Davis*,
    165 F.3d 265 (4th Cir. 1998)......................................................14

*Graham v. Connor*,
    490 U.S. 386 (1989)......................................................8

*Graves v. Zachary*,
    277 Fed. Appx. 344, 2008 WL 1924199 (5th Cir. 2008) ................................7, 12

*Hare v. City of Corinth*,
    135 F.3d 320 (5th Cir. 1998)......................................................11

*Hathaway v. Bazany*,
   507 F.3d 312 (5th Cir. 2007)...............................................................5

*Hudspeth v. City of Shreveport*,
   270 Fed. Appx. 332, 2008 WL 749547 (5th Cir. 2008) .......................4

*Lytle v. Bexar County*,
   560 F.3d 404 (5th Cir. 2009)
   *cert. denied*, 130 S. Ct. 1896 (2010)...........................................*passim*

*Mace v. City of Palestine*,
   333 F.3d 621 (5th Cir. 2003)...............................................................4

*Maldonado v. Fontanes*,
   568 F.3d 263 (1st Cir, 2009) .............................................................13

*Manis v. Lawson*,
   585 F.3d 839 (5th Cir. 2009)........................................................4, 12

*Martinez v. Maverick County*,
   2013 WL 163987 (5th Cir. 2013) .......................................................5

*McCoy v. Brazoria County Sherriff's Dept.*,
   66 F.3d 320, 1995 WL 534761 (5th Cir. 1995) ..................................5

*Meadours v. Ermel*,
   483 F.3d 417 (5th Cir. 2007)...............................................................7

*Newman v. Guedry*,
   703 F.3d 757 (5th Cir. 2013)..............................................................12

*Ontiveros v. City of Rosenberg*,
   564 F.3d 379 (5th Cir. 2009)...............................................................4

*Owens v. City of Austin*,
   259 Fed. Appx. 621, 2007 WL 4373084 (5th Cir. 2007) .....................5

*Pearson v. Callahan*,
   555 U.S. 223 (2009).................................................................iv, 15

*Poole v. City of Shreveport*,
  691 F.3d 624 (5th Cir. 2012)..............................................................13

*Quinn v. Roach*,
  326 Fed. Appx. 280, 2009 WL 1181072 (5th Cir. 2009),
  *cert. denied*, 130 S. Ct. 1050 (2010)..................................................12

*Ramirez v. Knoulton*,
  542 F.3d 124 (5th Cir. 2008).................................................................4

*Reese v. Anderson*,
  926 F.2d 494 (5th Cir. 1991).................................................................4

*Reyes v. Bridgwater*,
  362 Fed. Appx. 403, 2010 WL 271422 (5th Cir. 2010)...................7, 12

*Rockwell v. Brown*,
  664 F.3d 985 (5th Cir. 2011),
  *cert. denied*, 132 S. Ct. 2433 (2012).................................................4, 9

*Sanchez v. Edwards*,
  433 Fed. Appx. 272, 2011 WL 2893020 (5th Cir. 2011).....................5

*Sanchez v. Fraley*,
  376 Fed. Appx. 449, 2010 WL 1752123 (5th Cir. 2010)...................12

*Santiago v. City of Houston*,
  232 Fed. Appx. 381, 2007 WL 1010582 (5th Cir. 2007).....................4

*Saucier v. Katz*,
  533 U.S. 194 (2001)................................................................*passim*

*Scott v. Harris*,
  550 U.S. 372 (2007)..................................................................1

*Snyder v. Trepagnier*,
  142 F.3d 791 (5th Cir. 1998), *cert. granted*, 525 U.S. 1098,
  and *cert. dismissed*, 526 U.S. 1083 (1999)..........................................4

*Tennessee v. Garner,*
    471 U.S. 1 (1985) .............................................................................7, 8

*Torres v. City of Madera,*
    648 F.3d 1119 (9th Cir. 2011),
    *cert. denied*, 132 S. Ct. 1032 (2012) ........................................... 13, 14

*Young v. City of Killeen,*
    775 F.2d 1349 (5th Cir. 1985) .............................................................4

## Constitutional Provisions, Statutes and Rules

U.S. Const. amend. IV ..................................................................*passim*

42 U.S.C. § 1983 ...................................................................................1

Fed. R. App. P. 35 ........................................................................ iii, iv

Fed. R. Civ. P. 54 .................................................................................1

## STATEMENT OF THE ISSUES MERITING EN BANC CONSIDERATION

1. Should this Court depart from circuit precedent and drastically lower the threat level necessary before officers can permissibly use deadly force?

2. When adjudging qualified immunity, should officers' factual mistakes be considered in deciding whether the law was clearly established, given contrary precedent from the Supreme Court and other circuits?

## COURSE OF PROCEEDINGS AND DISPOSITION OF THE CASE

Robbie sued Cotton under 42 U.S.C. § 1983 for violating his Fourth Amendment right to be free from excessive force, as well as other claims. The district court held that Cotton enjoys qualified immunity from the § 1983 claim and entered judgment for Cotton under FED. R. CIV. P. 54(b). A panel of this Court affirmed in an opinion to be published.

## STATEMENT OF FACTS

What follows is "the plaintiff's version of the facts," since Cotton moved for summary judgment. *Scott v. Harris*, 550 U.S. 372, 378 (2007). These facts appear in the opinion unless there is a specific citation to the record. *See* Op. at 2-5.

Shortly before 2:00 a.m. on December 31, 2008, Robbie and his cousin Anthony Cooper drove to Robbie's home in Bellaire, Texas. Bellaire police officer John Edwards followed. Edwards incorrectly typed Robbie's license plate

number into his data terminal, producing a match with a stolen car. This led him to believe Robbie's car was stolen, though the Tolans actually owned it.

When Robbie and Anthony walked up the driveway toward the house, Edwards got out of his police car and drew his gun. He ordered them to lie down, and said he thought their car was stolen. Robbie's parents Marian and Bobby Tolan came out of the house in their pajamas and told Edwards Robbie was their son, they all lived there, and the car was not stolen. R. 2059, 2075. They also told Robbie and Anthony to lie down as Edwards had ordered, and both complied. Robbie lay on the porch with his arms outstretched facing the door. The lighting enabled one to see a person in the front yard "within reason." R. 1552-53. Some light was on the porch and Robbie was "not in darkness." R.E. 6 (R. 2497-99).

Cotton arrived to provide back-up. He thought Edwards was "in a dangerous situation." R. 1027. Edwards told him Robbie and Anthony "had gotten out of the stolen vehicle." Cotton saw Marian moving in front of and talking to Edwards and told her to move to the wall. She told Cotton the Nissan was not stolen, the Tolans lived there, and Robbie was their son. R.E. 7 (R. 1483), R.E. 8 (R. 1040, 1913-14). Marian testified that she was not "aggravated" or "getting agitated," but simply "in disbelief." R. 1032, R.E. 7 (R. 2075-77).

Cotton holstered his gun, grabbed Marian's right arm, and shoved her into the garage door. Reacting to this, Robbie exclaimed "get your fucking hands off

my mom," and started to rise.  He did not scream at Cotton.  R.E. 6 (R. 2544).  In order to stand, Robbie pulled his arms back toward his chest and pushed up.  *Id*. (R. 2494-95).  He began to turn and stand up "pretty quickly," but did not "jump up off the ground."  *Id.* (R. 2499, 2505).  Robbie "just simply got up.  Started to get up."  *Id*. (R. 2504).  "I didn't run at him.  I didn't jump up and make any crazy movements."  *Id*. (R. 2544).  He testified:

> At the time I was shot, I was unarmed, I was on my knees, and I did not have anything in my hands.  In the moments leading up to the shooting, I did not make any gesture towards or away from my waistband.

R.E. 5 (R. 2108).  Cotton was 15-20 feet from Robbie.

Before Robbie could stand up – when he was on his knees – Cotton shot him.  *See id*.  Although Robbie testified that he made no movements toward or away from his waist, Cotton said he feared Robbie was reaching toward his waistband for a weapon.  Cotton did not speak or warn Robbie before shooting.  R. 2080.  One bullet hit Robbie and remains lodged in his liver.  R.E. 5 (R. 2108).

## ARGUMENT

### I.     The Opinion Departs From Circuit Precedent and Drastically Lowers the Threat Level Necessary to Justify Deadly Force

The panel holds that Cotton enjoys qualified immunity from Robbie's claim of excessive force because it was objectively reasonable to fear that Robbie posed a serious threat to him.  Op. at 10-13.  This opinion conflicts sharply with this Court's other decisions on the use of deadly force and significantly changes the

calculus of objective reasonableness under the Fourth Amendment.

Until now, this Court had never held that a suspect who merely disobeys a police command to remain in place, says something provocative or even threatening, and begins to stand or otherwise move from his prior position could be met with deadly force. Rather, this circuit's many decisions upholding deadly force as reasonable – under either prong of the qualified immunity analysis – have always required a far more direct, obvious, and serious threat from the suspect.

For example, many decisions uphold police shootings because the suspect shot or displayed a gun (or something resembling a gun), brandished a knife, or at least made a reaching motion and moved his hand out of sight – conduct that could lead an objectively reasonable officer to believe the suspect was pulling a weapon.[1] In some cases, suspects drove vehicles toward officers or bystanders, hitting or at

---

[1]    *See Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 409 (2012); *Rockwell v. Brown*, 664 F.3d 985, 991-92 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 2433 (2012); *Carnaby v. City of Houston*, 636 F.3d 183, 188 (5th Cir. 2011); *Manis v. Lawson*, 585 F.3d 839, 844-45 (5th Cir. 2009); *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 383-85 (5th Cir. 2009); *Hudspeth v. City of Shreveport*, 270 Fed. Appx. 332, 2008 WL 749547 at * 5 (5th Cir. 2008); *Ramirez v. Knoulton*, 542 F.3d 124, 130-31 (5th Cir. 2008); *Santiago v. City of Houston*, 232 Fed. Appx. 381, 2007 WL 1010582 at * 2 (5th Cir. 2007); *Ballard v. Burton*, 444 F.3d 391, 402 (5th Cir. 2006); *Mace v. City of Palestine*, 333 F.3d 621, 625 (5th Cir. 2003); *Aujla v. Hinds County*, 61 Fed. Appx. 917, 2003 WL 1098839 at ** 3-4 (5th Cir. 2003); *Flatt v. City of Lancaster*, 273 F.3d 392, 2001 WL 1012952 at * 1 (5th Cir. 2001); *Denstel v. City of McComb*, 50 F.3d 1032, 1995 WL 136133 at * 3 (5th Cir. 1995); *Reese v. Anderson*, 926 F.2d 494, 500-01 (5th Cir. 1991); *Young v. City of Killeen*, 775 F.2d 1349, 1353 (5th Cir. 1985). In *Gilbert v. French*, the Court upheld the reasonableness of shooting a fleeing suspect who police thought was armed because he emerged from a building wearing a mask and holding a hostage after officers heard gunshots. *See* 364 Fed. Appx. 76, 2010 WL 445456 at * 6 (5th Cir. 2010). In *Snyder v. Trepagnier*, the Court upheld a jury verdict finding an officer immune because he could reasonably have believed the suspect pointed a gun at him before the officer fired. *See* 142 F.3d 791, 801-02 (5th Cir. 1998), *cert. granted*, 525 U.S. 1098, and *cert. dismissed*, 526 U.S. 1083 (1999).

least endangering them, and justifying deadly force.[2]   In one case, the suspect fought police, knocked officers down, and moved toward a car with a shotgun.[3]

Robbie's case is not just factually distinct from these – all cases have their own particulars.  His case is qualitatively different.  There is no case remotely like it where a shooting has been upheld as a matter of law.  The panel does not and cannot ratify the shooting based on Robbie making a motion that could be mistaken for pulling a weapon or putting his hands out of view.  Although Cotton testified that he thought Robbie was reaching for his waistband, the panel correctly acknowledges that Robbie specifically disputes making any sort of reaching motion toward or away from his waist or any other kind of "crazy movement." Op. at 9, 12; *supra* at 3.  Consequently, the panel relies only on the following: the "late hour," Robbie was suspected of "felony vehicle theft," there had been car burglaries the night before, the porch was not well lit, Marian "refus[ed] orders to remain quiet and calm," the officers were outnumbered, Robbie did not stay down as ordered, Robbie started to stand and turn, and Robbie said "get your fucking hands off my mom."  Op. at 9, 11-12.

---

[2]   *See Martinez v. Maverick County*, 2013 WL 163987 at * 1 (5th Cir. 2013); *Sanchez v. Edwards*, 433 Fed. Appx. 272, 2011 WL 2893020 at ** 2-3 (5th Cir. 2011); *Hathaway v. Bazany*, 507 F.3d 312, 321-22 (5th Cir. 2007); *Owens v. City of Austin*, 259 Fed. Appx. 621, 2007 WL 4373084 at * 3 (5th Cir. 2007); *McCoy v. Brazoria County Sheriff's Dept.*, 66 F.3d 320, 1995 WL 534761 at * 3 (5th Cir. 1995); *Fraire v. City of Arlington*, 957 F.2d 1268, 1275-77 (5th Cir. 1992), *cert. denied*, 506 U.S. 973 (1992).

[3]   *See Colston v. Barnhart*, 130 F.3d 96, 99-100 (5th Cir. 1997), *cert. denied*, 525 U.S. 1054 (1998).

As it happens, many of these facts are actually disputed. The opinion calls the porch "dimly-lit," Op. at 12, but the Tolans testified it was reasonably illuminated. *See supra* at 2. The panel describes Marian as "in an agitated state" and "screaming" at Cotton, Op. at 3-4; she testified she was not "aggravated" or "getting agitated" but just speaking to the officers. *See supra*. at 2. The panel states that Robbie "yelled" or "shout[ed]" at Cotton, Op. 4, 9; Robbie stated that he did not scream. *See supra* at 3. Most important, Robbie did not "mov[e] to intervene in Sergeant Cotton's separating his mother," or "abruptly attempt[] to approach Sergeant Cotton." Op. at 9, 13. He testified that he did nothing more than begin to stand, and then he was shot on his knees. *See supra* at 3.

There are other facts the panel discounts or ignores. Marian and Bobby were middle-aged homeowners in their pajamas who vouched for Robbie and Anthony and explained to the officers that they lived there, that the car was not stolen, and that the officers were making a mistake. *See supra* at 2. A jury could find this information was credible, that it required Edwards and Cotton to reassess the situation, and that it decreased the overall threat level and reduced the chances Robbie was armed. *See Lytle v. Bexar County,* 560 F.3d 404, 413 (5th Cir. 2009) ("an exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased"), *cert. denied*, 130 S. Ct. 1896 (2010). A jury could also find that a warning was feasible, which would

have required giving one. *See Tennessee v. Garner,* 471 U.S. 1, 11-12 (1985). Cotton says he said "stop or no" before firing, R. 1061-62; the Tolans say he said nothing. *See supra* at 3. The panel ignores this basic and dispositive issue entirely.

But more fundamentally, even if the facts are exactly as the panel describes them, there is no precedent for holding that a car theft suspect's disobeying orders to lie down, getting to his knees, and exclaiming "get your fucking hands off my mom" warrants deadly force – even if it is late at night and someone else on the scene is being uncooperative. *See, e.g., Baker v. Putnal*, 75 F.3d 190, 198 (5th Cir. 1996) ("Chaos on the beach and Baker, Jr.'s mere motion to turn and face Putnal are not compelling reasons to find that Putnal's [shooting Baker] was not excessive as a matter of law"). This circuit's precedents consistently hold that there must be a much more tangible threat of death or serious violence. Indeed, summary judgment based on qualified immunity has often been denied in police shooting cases though suspects actually displayed guns or knives or fought with police.[4]

It is an unfortunate reality that police frequently confront people who disobey their commands to stay still and say provocative, even ominous things. Such people may even be running afoul of catch-all provisions of the Texas Penal or Transportation Codes. *See* Op. at 13. But *to be shot*, a person must do much

---

[4] *See, e.g., Reyes v. Bridgwater*, 362 Fed. Appx. 403, 2010 WL 271422 at * 4-5 (5th Cir. 2010); *Graves v. Zachary*, 277 Fed. Appx. 344, 2008 WL 1924919 at * 4 (5th Cir. 2008); *Meadours v. Ermel*, 483 F.3d 417, 423 (5th Cir. 2007); *Bacque v. Leger*, 207 Fed. Appx. 374, 2006 WL 3253611 at * 1 (5th Cir. 2006); *Bazan v. Hidalgo County*, 246 F.3d 481, 492-93 (5th Cir. 2001).

more: he must "pose[] a significant threat of death or serious physical injury."
*Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004) (quoting *Garner,* 471
U.S. at 3).  That threat must also be "immediate," *Graham v. Connor*, 490 U.S.
386, 396 (1989), and it has long been settled that disobeying a police command to
remain in place is not enough.  *See Garner*, 471 U.S. at 3-4, 10-11.  The facts of
this case come nowhere near this properly exacting standard.  They are miles apart
from those previously held to justify deadly force.  A jury should have been
allowed to examine them and pass on Robbie's § 1983 claim.

Left standing, this opinion will have lasting and significant impact.  Police
officers are trained to the standards of the judicial decisions on excessive force, as
Cotton's expert witness, a former police instructor, confirmed.  R. 1794.  More
broadly, decisions resolving dramatic and widely publicized events like police
shootings play a major role in shaping public opinion about law enforcement and
government generally.  This decision charts a new course in this circuit and signals
to citizens and officers alike that the legal bar to be cleared before police can shoot
someone has lowered.

## II.     The Panel's Misapplication of Qualified Immunity Contravenes Supreme Court Precedent and the Decisions of Other Circuits

The panel's decision misconceives the second prong of the qualified
immunity analysis.  Instead of asking the legal question whether the law governing
Cotton's conduct was clearly established when he shot Robbie, it analyzes the facts

to determine whether they could cause a reasonable officer to fear harm justifying a deadly response. This approach contradicts Supreme Court authority, adds to existing confusion in this circuit about qualified immunity, puts the Court at odds with other circuits, short-changes the role of juries in excessive force cases, and frustrates the development of constitutional precedent.

In an excessive force case, both prongs of the qualified immunity analysis involve objective reasonableness. *See Lytle*, 560 F.3d at 409-10. The first prong, governing whether a Fourth Amendment violation occurred, entails deciding whether the use of force was objectively unreasonable. *See Rockwell,* 664 F.3d at 991. The second prong asks "whether the law was sufficiently clear that a reasonable officer would have known that his conduct violated the constitution. In other words, at this second step, we must ask the somewhat convoluted question of whether the law lacked such clarity that it would be reasonable for an officer to erroneously believe that his conduct was reasonable." *Lytle,* 560 F.3d at 410. As the panel correctly observes, these two reasonableness inquiries should "remain distinct." Op. at 8; *accord Lytle,* 560 F.3d at 410.

Despite paying lip service to the required difference between the two reasonableness tests, the panel actually uses the one meant for the first prong to decide the second prong. In *Saucier*, the Supreme Court instructed that the first prong's objective reasonableness analysis is designed to account for situations

where an officer reasonably misperceives facts at the scene and consequently uses more force than might actually have been necessary.  *See* 533 U.S. at 203-05.  "If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed."  *Id*. at 205.    In that event, the force used is objectively reasonable and no Fourth Amendment violation has occurred.  *See id*. at 205-06.

This contrasts with officers' *legal* mistakes, which are covered by the reasonableness test that is part of the second, "clearly established" prong:

> The qualified immunity inquiry, on the other hand, has a further dimension. The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct.  It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts.  An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances.  If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

*Id*. at 205.  Thus, the purpose of the second prong is simply to ensure an officer had fair warning his conduct was illegal.  *See id*. at 202; *Lytle*, 560 F.3d at 417.  As the Court put it in *Ashcroft v. Al-Kidd*: "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments *about open legal questions*."  131 S. Ct. 2074, 2085 (2011) (emphasis added).

The panel's decision ignores this cardinal distinction between the first and second prongs of qualified immunity.  It does not ask whether Cotton reasonably

misinterpreted or could not have been expected to grasp the law governing his conduct, or whether that law was unsettled. Instead, it subdivides the "clearly established" prong into "two separate inquiries," the second of which duplicates the factual reasonableness analysis of the first prong governing whether there is a violation. The panel describes what happened and assesses whether Cotton could reasonably have felt in "fear for his life." Op. at 11-12. It notes Cotton's "underlying assumptions [were] erroneous," and cites his "mistake of fact" about Robbie's actual dangerousness. *Id.* at 12, 13. This analysis concerns whether Cotton used excessive force and thus violated the Fourth Amendment, not whether applicable law was sufficiently settled for him to know his actions were illegal.

Why does it matter that the Court erroneously analyzed the factual objective reasonableness of the shooting under the second prong rather than the first? First, it ignores the teaching of *Saucier* that the second prong of the immunity analysis is reserved for mistakes of law, not fact. This Court may not redefine or rearrange the qualified immunity analysis in a way inconsistent with the Supreme Court's leading decision on the subject. The panel's opinion relies on case law decided before *Saucier*. *See* Op. at 8 (citing *Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir. 1998)). As discussed below, other circuits and one panel of this Court have acknowledged that this pre-*Saucier* approach is no longer viable.

Second, the opinion only adds to the confusion in this Circuit that already

surrounds qualified immunity. In assessing the second prong, the Court usually just engages in legal analysis to determine the content of then-existing law and whether it would have notified an officer his conduct was illegal.[5]  It does not recapitulate whether the conduct was factually reasonable, that is, whether the officer reasonably felt threatened in light of the circumstances.  This makes sense because "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct."  *Crawford-El v. Britton*, 523 U.S. 574, 591 (1998) (quotation omitted).

At least one decision of this Court has therefore questioned dividing the "clearly established" inquiry into two separate subparts, as the panel did here:

> This circuit has at times characterized its approach in qualified immunity cases as a three-pronged inquiry in which the traditional second prong is divided into two separate and distinct inquiries: whether the right was clearly established and whether an officer's conduct was objectively reasonable.  The Supreme Court's recent case law makes it clear that these inquiries are more appropriately viewed not as separate and distinct, but as two sides of the same analytical coin.

*Quinn v. Roach*, 326 Fed. Appx. 280, 2009 WL 1181072 at * 4 n. 2 (5th Cir. 2009) (citations omitted), *cert. denied*, 130 S. Ct. 1050 (2010).  Another recent case featured disagreement over whether the Court's decision about the factual reasonableness of an officer's use of force involved the "merits" under the first

---

[5]    *See, e.g.*, *Newman v. Guedry*, 703 F.3d 757, 763-64 (5th Cir. 2013); *Sanchez v. Fraley*, 376 Fed. Appx. 449, 2010 WL 1752123 at * 4 (5th Cir. 2010); *Reyes*, 2010 WL 271422 at ** 4-5; *Manis*, 585 F.3d at 845-46; *Graves*, 2008 WL 1924199 at * 4; *Lytle*, 560 F.3d at 410, 417.

prong, or immunity under the second.  *See Poole v. City of Shreveport*, 691 F.3d 624, 630, 638 n. 4 (5th Cir. 2012) (Elrod, J., concurring in part and dissenting in part).  And at least one district court has noted that factual reasonableness is relevant only to the first prong, not the second – contrary to the panel's approach. *See Brown v. Faison*, 2005 WL 473681 at * 3 n. 1 (N.D. Tex. 2005).  Performing two kinds of reasonableness inquiries is challenging enough.  *See Saucier*, 533 U.S. at 210 (Ginsberg, J., concurring) ("The two-part test today's decision imposes holds large potential to confuse").  The panel's decision compounds the difficulty and invites duplication of the first prong analysis when considering the second.

Third, the panel's approach puts this Court at odds with other circuits.  The First Circuit has specifically rejected treating objective reasonableness as a separate sub-question in the "clearly established" analysis, in light of *Saucier*.  *See Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir, 2009).  The Seventh Circuit similarly considers objective reasonableness as relevant to the first prong under Saucier, not the second.  *See Estate of Escobedo v. Bender*, 600 F.3d 770, 779 n. 3 (7th Cir. 2010), *cert. denied*, 131 S. Ct. 463 (2010).  The Second, Third and Ninth Circuits reject the panel's view that an officer's misjudgment of the facts relates to the "clearly established" prong: "While the constitutional violation prong concerns the reasonableness of the officer's *mistake of fact,* the clearly established prong concerns the reasonableness of the officer's *mistake of law*."  *Torres v. City of*

*Madera*, 648 F.3d 1119, 1127 (9th Cir. 2011) (emphasis in original), *cert. denied*, 132 S. Ct. 1032 (2012); *accord Curley v. Klem*, 499 F.3d 199, 214 (3d Cir. 2007); *Cowan v. Breen*, 352 F.3d 756, 761-62 (2d Cir. 2003). These decisions postdate *Saucier*. By contrast, the panel's opinion derives from pre-*Saucier* case law and therefore diverges from how other circuits now decide qualified immunity.[6]

Fourth, the panel's opinion undermines the role of juries in determining reasonableness under the Fourth Amendment. Juries are instrumental in deciding the first prong question the panel resolved here: whether the challenged use of force was reasonable under the circumstances. As this Court observed in *Lytle*:

> Moreover, the reasonableness of an officer's conduct under the Fourth Amendment is often a question that requires the input of a jury. This is not only because the jury must resolve disputed fact issues but also because the use of juries in such cases strengthens our understanding of Fourth Amendment reasonableness. As the Third Circuit stated in *Abraham v. Raso*, 183 F.3d 279, 290 (3d Cir. 1999),
>
>> [R]easonableness under the Fourth Amendment should frequently remain a question for the jury. To put the matter more directly, since we lack a clearly defined rule for declaring when conduct is unreasonable in a specific context, we rely on the consensus required by a jury decision to help ensure that the ultimate legal judgment of "reasonableness" is itself reasonable and widely shared.

560 F.3d at 411. On the other hand, the second prong of qualified immunity ordinarily does not involve juries because it raises "an essentially legal question."

---

[6]     Even before *Saucier*, the Fourth Circuit rejected a freestanding, tort-like reasonableness requirement as part of determining qualified immunity that is distinct from the specific question whether an officer would have known his conduct was illegal. *See Gould v. Davis*, 165 F.3d 265, 273 (4th Cir. 1998). The opinion here therefore also conflicts with Fourth Circuit case law.

*Crawford-El*, 523 U.S. at 589 (quotation omitted).  By shifting factual objective reasonableness into the legal "clearly established" inquiry, the Court restricts the ability of juries to define what should qualify as reasonable under the Fourth Amendment in conditions like those present here.  Instead, the panel just cuts to the chase and determines objective reasonableness for itself.

Finally, by shunting fact-based objective reasonableness into the second prong, the Court "fail[s] to give guidance to officials about how to comply with legal requirements." *Camreta v. Greene*, 131 S.Ct. 2020, 2031 (2011).  Though allowed under *Pearson*, skipping ahead and finding immunity instead of confronting whether a violation occurred "may frustrate the development of constitutional precedent and the promotion of law-abiding behavior." *Camreta*, 131 S.Ct. at 2031.  If courts can decide whether force was objectively reasonable when determining immunity under the second prong, there will be little or no occasion to definitively resolve what the Fourth Amendment permits or disallows under the first prong.  The law will continue to be unsettled – or not "clearly established" – and claims will be serially dismissed.  Officers will continue to lack guidance.  "And again, and again, and again." *Id.*  Fourth Amendment law and "the promotion of law-abiding behavior" will suffer as a result. *Id.*

## CONCLUSION

For the foregoing reasons, the Court should hear this appeal en banc.

May 9, 2013                      Respectfully Submitted,


                                 _____*Martin J. Siegel*_____*/s/*_____
                                 Martin J. Siegel
                                 Texas State Bar No. 18342125
                                 LAW OFFICES OF MARTIN J. SIEGEL, P.C.
                                 Bank of America Center
                                 700 Louisiana St., Suite 2300
                                 Houston, TX 77002
                                 Telephone: (713) 226-8566

                                 *Attorneys for Petitioner-Appellant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of May, 2013, this petition for rehearing en banc was served via the Court's EC/CMF system on the following:


William Helfand
Norman Ray Giles
Chamberlain, Hrdlicka, White, Williams & Aughtry
1200 Smith Street, Suite 1400
Houston, TX 77002

*Counsel for Appellee-Respondent*


      *Martin J. Siegel*       */s/*
Martin J. Siegel

Panel Opinion: *Tolan v. Cotton*, No. 12-20296

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

# FILED

April 25, 2013

No. 12-20296

Lyle W. Cayce
Clerk

ROBERT R. TOLAN; MARIAN TOLAN,

Plaintiffs - Appellants

v.

JEFFREY WAYNE COTTON,

Defendant - Appellee

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:09-CV-1324

Before JONES, BARKSDALE, and SOUTHWICK, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge.

Primarily at issue in this appeal from a summary judgment is qualified immunity's being granted for a police officer's use of deadly force against a felony suspect, injuring him. This action concerns the various claims of four plaintiffs against numerous defendants; the appeal is from a Federal Rule of Civil Procedure 54(b) judgment (partial final judgment capable of immediate appeal). This appeal involves only two of the plaintiffs and one of the defendants.

After summary judgment, based on qualified immunity, was awarded police officers Jeffrey Wayne Cotton and John C. Edwards against the four plaintiffs, the Rule 54(b) judgment was entered for the two Officers. Only Robert

No. 12-20296

R. Tolan (Robbie Tolan) and his mother, Marian Tolan, appeal from that judgment, however; and they challenge only the judgment in favor of Sergeant Cotton.  In doing so, they contest the underlying summary judgment, based on qualified immunity, awarded Sergeant Cotton against their excessive-force claims.  Because no genuine dispute of material fact exists for whether Sergeant Cotton's directing deadly force at Robbie Tolan and non-deadly force at Marian Tolan was objectively unreasonable in the light of clearly-established law, the Rule 54(b) judgment in favor of Sergeant Cotton is AFFIRMED.

## I.

For the reasons provided *infra*, the following facts are presented, as they must be on summary-judgment review, in the light most favorable to Robbie and Marian Tolan.

While patrolling shortly before two o'clock in the morning on 31 December 2008, in Bellaire, Texas, Officer Edwards noticed a black Nissan turn abruptly onto a residential street.  Officer Edwards became suspicious immediately because 12 vehicles had been burglarized in Bellaire the previous night, and he knew the street terminated in a cul-de-sac.  Surveilling the Nissan from a distance, Officer Edwards observed Robbie Tolan and Anthony Cooper park on the street in front of a house and exit the vehicle.  Officer Edwards drove past the vehicle and entered its license-plate number into his mobile data terminal (MDT).  Officer Edwards mistakenly keyed an incorrect character; his entry resulted in a match with a stolen vehicle of the same make and approximate year of manufacture.  The MDT sent a message automatically to other police units, alerting them Officer Edwards had identified a stolen vehicle.

Officer Edwards next approached the vehicle and, observing Robbie Tolan and Cooper carrying items from the vehicle to the house, illuminated them with his cruiser's spotlight. Officer Edwards exited his cruiser, drew his service pistol and flashlight, identified himself as a police officer, and ordered Robbie Tolan

No. 12-20296

and Cooper to "come here". When Robbie Tolan and Cooper cursed Officer Edwards and refused to comply, Officer Edwards stated to them his belief the black Nissan was stolen and ordered them onto the ground.

Shortly thereafter, Robbie Tolan's parents, Bobby and Marian Tolan, exited the house through the front door. Again, Officer Edwards stated his belief that Robbie Tolan and Cooper had stolen the Nissan; Robbie Tolan and Cooper complied with Officer Edwards' ordering them onto the ground only after Marian and Bobby Tolan ordered them to do so. Bobby Tolan identified Robbie Tolan as his son, and Marian Tolan stated the Nissan belonged to them. Bobby Tolan yelled at Cooper and Robbie Tolan to stay down; and Marian Tolan walked repeatedly in front of Officer Edwards' drawn pistol, insisting no crime had been committed. Dealing with four people in a chaotic and confusing scene, Officer Edwards radioed for expedited assistance. Sergeant Cotton responded and, hearing the tension in Officer Edwards' voice, believed him to be in danger. Sergeant Cotton arrived approximately one and one-half minutes after Officer Edwards' arrival.

Upon his arrival, Sergeant Cotton observed: Officer Edwards with pistol drawn; Bobby Tolan standing to Officer Edwards' left, next to a sport-utility vehicle parked in the Tolans' driveway, where Officer Edwards had ordered him to stand; Marian Tolan "moving around" in an agitated state in front of Officer Edwards; and Cooper lying prone. Sergeant Cotton drew his pistol and moved in to assist. Although Sergeant Cotton did not immediately observe Robbie Tolan, whose form was obscured by a planter on the front porch, Officer Edwards informed Sergeant Cotton that "the two on the ground had gotten out of a stolen vehicle". A single gas lamp in front of the house and two motion lights in the driveway illuminated the scene. In his deposition, Sergeant Cotton described the gas lamp as "decorative" and the front porch, where Robbie Tolan was lying,

No. 12-20296

as "fairly dark"; in his deposition, Bobby Tolan stated the gas lamp provided enough light to identify a person in the front yard "within reason".

Robbie Tolan was lying face-down on the porch, with his head toward the front door and his arms extended. As noted, a planter on the front porch obscured Robbie Tolan's position from Sergeant Cotton's view.

Sergeant Cotton recognized the immediate need to handcuff and search the felony suspects, but Marian Tolan's movement and demeanor frustrated the Officers' doing so; moreover, Marian Tolan continued to insist the car was not stolen, and stated they had lived in the house for 15 years. In an attempt to control the situation, Sergeant Cotton ordered Marian Tolan to move to the garage door; she refused, and became argumentative. Sergeant Cotton again requested Marian Tolan to move out of the Officers' way, and stated the situation would be worked out after they concluded their investigation. Marian Tolan's protestations continued; when Sergeant Cotton ordered her to "get against the garage", she refused, stating: "Me? Are you kidding?".

In response, Sergeant Cotton holstered his pistol, clutched Marian Tolan's arm, placed his other hand in the small of her back, and attempted to move her to the garage door. Despite her jerking her arm away and screaming "get your hands off me", Sergeant Cotton physically moved her to the garage door so a search of Robbie Tolan and Cooper could be conducted. From this angle, Sergeant Cotton then observed Robbie Tolan lying prone and facing away from Sergeant Cotton; the complaint for this action alleges the distance between Sergeant Cotton and Robbie Tolan was approximately 15 to 20 feet.

Sergeant Cotton's method of handling Marian Tolan angered Robbie Tolan; upon seeing his mother pushed into the garage door and hearing a metallic impact, Robbie Tolan yelled "get your fucking hands off my mom!", pulled his outstretched arms to his torso, and began getting up and turning toward Sergeant Cotton. Fearing Robbie Tolan was reaching towards his waistband for

No. 12-20296

a weapon, Sergeant Cotton drew his pistol and fired three rounds at Robbie Tolan, striking him once in the chest and causing serious internal injury. At the time, Robbie Tolan was wearing a dark zippered jacket, known as a "hoodie", which was untucked and hung over the top of his trousers, concealing his waistband. A subsequent search revealed Robbie Tolan was unarmed. Between Sergeant Cotton's arriving on the scene and his discharging his pistol, a mere 32 seconds elapsed.

In April 2009, Sergeant Cotton was charged in a state-court indictment with one count of aggravated assault by a public servant. A jury acquitted Sergeant Cotton in May 2010. As noted *infra*, excerpts from Sergeant Cotton's criminal trial, including testimony by Sergeant Cotton, Officer Edwards, and the Tolans, are in the summary-judgment record.

In May 2009, following Sergeant Cotton's being indicted that April, the Tolans and Cooper filed this action, *inter alia*, pursuant to 42 U.S.C. § 1983 against Sergeant Cotton, Officer Edwards, and the City of Bellaire, claiming, *inter alia*: Sergeant Cotton and Officer Edwards violated Robbie and Marian Tolan's right to freedom from excessive force (under Fourth Amendment, incorporated in Fourteenth); and both Officers acted in furtherance of a City of Bellaire official policy of racial profiling and discrimination. The Officers invoked qualified immunity in their answer, and, after discovery, moved for summary judgment on that basis.

The district court, in an extremely detailed and well-reasoned opinion, granted the Officers' summary-judgment motion, based on qualified immunity; it held the Tolans and Cooper had not shown a constitutional violation, as required by the first of two prongs for qualified-immunity analysis, discussed *infra*. *Tolan v. Cotton*, 854 F.Supp. 2d 444, 478 (S.D. Tex. 2012). Finding there was "no just reason for delay", it entered final judgment for the Officers under Federal Rule of Civil Procedure 54(b).

No. 12-20296

## II.

For an action involving multiple parties, a district court may enter final judgment for fewer than, *inter alia*, all parties if it "expressly determines that there is no just reason for delay". FED. R. CIV. P. 54(b). "If the language in the order appealed from . . . reflects the district court's unmistakable intent to enter a partial final judgment under Rule 54(b), nothing else is required to make the order appealable." *Kelly v. Lee's Old Fashioned Hamburgers, Inc.*, 908 F.2d 1218, 1220 (5th Cir. 1990) (en banc). Re-stated, a Rule 54(b) judgment is a final decision capable of immediate appellate review pursuant to 28 U.S.C. § 1291. *Seatrain Shipbuilding Corp. v. Shell Oil Co.*, 444 U.S. 572, 583-84 (1980); *Elizondo v. Green*, 671 F.3d 506, 509 (5th Cir. 2012).

Of the four plaintiffs, only Robbie and Marian Tolan contest the summary judgment. Moreover, they only contest its being awarded Sergeant Cotton.

A summary judgment is reviewed *de novo*. *Burge v. Parish of St. Tammany*, 187 F.3d 452, 464 (5th Cir.1999). Summary judgment is proper if movant shows: no genuine dispute as to any material fact; and being entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "A dispute is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012) (internal citation and quotation marks omitted). "A fact issue is material if its resolution could affect the outcome of the action." *Id.* (internal citation and quotation marks omitted). In that regard, all facts and inferences are construed in the light most favorable to non-movants. *E.g.*, *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005). But, for review of a summary judgment upholding qualified immunity, plaintiff bears the burden of showing a genuine dispute of material fact. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (qualified-immunity defense alters summary judgment burden of proof).

No. 12-20296

Extensive discovery has been conducted. Sergeant Cotton supported his summary-judgment motion with, *inter alia*: portions of his, Officer Edwards', and Robbie, Marian, and Bobby Tolan's depositions; and portions of Doctor William Lewinski's and Lieutenant Albert Rodriguez' expert-witness depositions, as well as their declarations, to which their expert reports were attached. Robbie and Marian Tolan supported their opposition to that motion with, *inter alia*: portions of Sergeant Cotton's and Officer Edwards' depositions and trial testimony; portions of Robbie Tolan's deposition and trial testimony, and his declaration; portions of Marian and Bobby Tolan's depositions and trial testimony; portions of Dr. Lewinski's deposition; and portions of Lt. Rodriguez' expert report and deposition.

Qualified immunity promotes the necessary, effective, and efficient performance of governmental duties, *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982), by shielding from suit all but the "plainly incompetent or those who knowingly violate the law", *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (internal citation and quotation marks omitted); *Mitchell v. Forsythe*, 472 U.S. 511, 526 (1985) (qualified immunity is immunity from suit, not merely an affirmative defense to liability). As noted, after defendant properly invokes qualified immunity, plaintiff bears the burden to rebut its applicability. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). To abrogate a public official's right to qualified immunity, plaintiff must show: first, the official's conduct violated a constitutional or statutory right; and second, the official's "actions [constituted] objectively unreasonable [conduct] in [the] light of clearly established law at the time of the conduct in question". *Brumfield*, 551 F.3d at 326.

For an excessive-force claim, plaintiff clears the first prong of the qualified-immunity analysis at the summary-judgment stage by showing a genuine dispute of material fact for whether plaintiff sustained: "(1) an injury

No. 12-20296

(2) which resulted from the use of force that was clearly excessive to the need and (3) the excessiveness of which was clearly unreasonable". *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011) (quoting *Hill v. Carroll Cnty.*, 587 F.3d 230, 234 (5th Cir. 2009)).

For the second prong at the summary-judgment stage, plaintiff must similarly show a genuine dispute of material fact for two distinct, but intertwined, elements. "The second prong of the qualified immunity test is [] understood as two separate inquiries:  whether the allegedly violated constitutional rights were *clearly established at the time of the incident*; and, if so, whether the [defendant's conduct] was *objectively unreasonable* in the light of that then clearly established law." *Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir. 1998) (first emphasis in original) (second emphasis added).

In the excessive-force context at issue here, although the long-established two prongs of qualified-immunity analysis contain "objective reasonableness" elements, those prongs remain distinct and require independent inquiry. *Brumfield*, 551 F.3d at 326. Importantly, the sequence of analysis is immaterial, *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); qualified immunity may be granted without deciding the first prong if plaintiff fails to satisfy the second, *Kovacic v. Villarreal*, 628 F.3d 209, 213 (5th Cir. 2010).  Deciding the second prong first is often advisable; for example, if, as here, a constitutional right is claimed to have been violated (first prong), "this approach [of first addressing the second prong] comports with [the] usual reluctance to decide constitutional questions unnecessarily". *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012).

## A.

Contesting the summary judgment based on qualified immunity, Robbie Tolan contends a genuine dispute of material fact exists for whether Sergeant Cotton could have reasonably perceived him as a threat which justified the use of deadly force.  He asserts a reasonable officer on the scene should have

No. 12-20296

possessed information that Robbie Tolan was neither armed nor dangerous, thereby reducing the perceived threat level and negating any belief deadly force was necessary. Along that line, he relies on Marian and Bobby Tolan's exiting the house wearing pajamas and insisting Robbie Tolan and Cooper did not steal the vehicle. Robbie Tolan cites case law from other circuits for the proposition that this "updated information" negated any impression Sergeant Cotton may have had that deadly force could be reasonable. He disputes also Sergeant Cotton's maintaining Marian Tolan was shoved into the garage door so Sergeant Cotton could address a perceived threat; instead, Robbie Tolan contends he reacted *because* his mother was shoved into the garage door. Finally, asserting he never reached toward or into his waistband as claimed by Sergeant Cotton, Robbie Tolan relies on our court's unpublished opinion in *Reyes v. Bridgwater*, 362 F. App'x 403 (5th Cir. 2010), for the proposition that this disputed location of his hands is a genuine dispute of material fact, precluding summary judgment and, accordingly, mandating reversal.

The undisputed summary-judgment evidence, however, shows: Officer Edwards and Sergeant Cotton believed they were dealing with a felony vehicle theft; multiple burglaries of vehicles had occurred in the area the night prior; the Tolans' front porch was not well lit; Robbie Tolan, in spite of Officer Edwards' having drawn his pistol, disobeyed orders to remain prone while the Officers attempted to establish order and investigate the situation; and Robbie Tolan's moving to intervene in Sergeant Cotton's separating his mother was preceded by his shouting "get your fucking hands off my mom!".

Viewing the summary-judgment record in the light most favorable to him, Robbie Tolan has not met his burden to show a genuine dispute of material fact, *Michalik*, 422 F.3d at 262, for whether Sergeant Cotton's conduct was objectively unreasonable in the light of clearly established law, *Brumfield*, 551 F.3d at 326. Accordingly, as discussed *infra*, and although based on a prong of qualified-

No. 12-20296

immunity analysis different from that relied upon by the district court, Sergeant Cotton is entitled to qualified immunity; his actions being required to "be judged from the perspective of a reasonable officer on the scene" steers the analysis to that conclusion. *Graham v. Connor*, 490 U.S. 386, 396 (1989).

### 1.

Exercising the above-referenced "usual reluctance to decide constitutional questions unnecessarily", *Reichle*, 132 S. Ct. at 2093, we do not reach whether Sergeant Cotton's shooting Robbie Tolan violated his Fourth Amendment right against excessive force (as noted, the district court relied on this first prong of qualified-immunity analysis). As discussed above, showing violation of a constitutional right does not end the inquiry when qualified immunity properly has been invoked. Sergeant Cotton is entitled, through summary judgment, to qualified immunity under the second prong of the analysis.

### 2.

A right is sufficiently clear, and therefore "clearly established", when "every 'reasonable official would have understood that what he is doing violates that right'". *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "[E]xisting precedent must [] place[] the statutory or constitutional question beyond debate". *al-Kidd*, 131 S. Ct. at 2083. This "clearly-established" standard balances the vindication of constitutional or statutory rights and the effective performance of governmental duties by ensuring officials can "reasonably . . . anticipate when their conduct may give rise to liability for damages". *Davis v. Scherer*, 468 U.S. 183, 195 (1984). As discussed *supra*, this second-prong question of whether the law was *clearly established* cannot be untethered from the concomitant question of whether the challenged conduct was *objectively unreasonable* in the light of that clearly-established law. *Poole*, 691 F.3d at 630; *see also Saucier v. Katz*, 533 U.S. 194, 205 (2001), *modified by Pearson v. Callahan*, 555 U.S. 223 (2009) (qualified

No. 12-20296

immunity under the second prong may attach irrespective of constitutional violation under the first, which in the excessive-force context includes a separate objective-reasonableness inquiry).

It is undisputed that, when Sergeant Cotton shot Robbie Tolan, it was also clearly established that an officer had the right to use deadly force if that officer harbored an objective and reasonable belief that a suspect presented an "immediate threat to [his] safety". *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009); *see also Ontiveros v. City of Rosenberg*, 564 F.3d 379 (5th Cir. 2009); *Young v. City of Killeen*, 775 F.2d 1349 (5th Cir. 1985). Therefore, for Robbie Tolan to prevent Sergeant Cotton's having qualified immunity, he must show a genuine dispute of material fact on whether "every 'reasonable official would have understood'" Sergeant Cotton's using deadly force was objectively unreasonable under the circumstances and clearly-established law. *al-Kidd*, 131 S. Ct. at 2083; *Poole*, 691 F.3d at 630. To be sure, it was clearly established that shooting an unarmed, non-threatening suspect is a Fourth-Amendment violation. *Tennessee v. Garner*, 471 U.S. 1 (1985). But, that is only half of the equation for second-prong analysis; the remainder depends upon the totality of the circumstances as viewed by a reasonable, on-the-scene officer without the benefit of retrospection. *Poole*, 691 F.3d at 628.

As explained above, an objectively-reasonable officer in Sergeant Cotton's position would have had neither knowledge of, nor reason to suspect, Officer Edwards' having mistakenly identified Robbie Tolan's vehicle as stolen. Justified in his believing – however erroneously in hindsight – Robbie Tolan and Cooper had stolen a vehicle, an objectively-reasonable officer in Sergeant Cotton's position could have also believed Robbie Tolan's verbally threatening him and getting up from his prone position presented an "immediate threat to the safety of the officers". *Deville*, 567 F.3d at 167. Compounding that threat were the surrounding circumstances: the late hour; recent criminal activity in

11

No. 12-20296

the area; a dimly-lit front porch; Marian Tolan's refusing orders to remain quiet and calm; and the Officers' being outnumbered on the scene. Robbie Tolan admitted that he drew his outstretched arms toward his chest, did a push-up maneuver, and began turning to his left to face Sergeant Cotton; under the above-described circumstances, these actions could have placed an objectively-reasonable officer in, as Sergeant Cotton testified, fear for his life. Accordingly, whether Robbie Tolan reached into or toward his waistband does *not* create a genuine dispute of material fact on objective reasonableness *vel non*.

As part of the support for his summary-judgment motion, Sergeant Cotton presented expert testimony from Dr. Lewinski and Lt. Rodriguez. In his expert report, Dr. Lewinski stated that, as a matter of science, an officer has only one-quarter of one second to recognize a threat and respond accordingly. Likewise, Lt. Rodriguez stated in his deposition that officers have but a fraction of a second to react to threats. Further, and in the light of these scientific principles, they maintained officers cannot be trained to positively identify a weapon before resorting to deadly force. Robbie Tolan provided no evidence rebutting this expert evidence; yet, even if he had, an officer's right to use deadly force when objectively reasonable under the circumstances is also clearly established and "beyond debate", *al-Kidd*, 131 S. Ct. at 2083 – even when, as here, hindsight proves underlying assumptions to be erroneous. *E.g.*, *Young*, 775 F.2d 1349 (qualified immunity where officer fatally shot unarmed driver who reached under seat); *Ontiveros*, 564 F.3d 379 (same, where officer fatally shot unarmed suspect who reached into boot). In short, Sergeant Cotton's split-second decision to use deadly force does not amount to the type of "plain[] incompeten[ce]" necessary to divest him of qualified immunity. *Brumfield*, 551 F.3d at 326.

Along that line, Robbie Tolan had clear and obvious warning of Officer Edwards' and Sergeant Cotton's believing deadly force might be required under the circumstances: both made clear their belief Robbie Tolan's vehicle was

12

No. 12-20296

stolen; Sergeant Cotton drew his pistol upon his arriving on the scene; and Officer Edwards continually covered Robbie Tolan and Cooper with pistol drawn throughout the sequence of events. *E.g., Garner*, 471 U.S. at 11-12 (deadly force not unconstitutional when probable cause to believe crime involving threat of serious physical harm has been committed and, if feasible, suspect warned deadly force may be used).

Noteworthy here, Robbie Tolan's refusing to obey a direct order to remain prone violated Texas Penal Code § 38.15 and Texas Transportation Code § 542.501 in Sergeant Cotton's presence; those sections provide: "[a] person commits an offense" by disrupting or impeding "a peace officer . . . performing a duty or exercising authority imposed . . . by law", § 38.15(a)(1); and "[a] person may not wilfully fail or refuse to comply with a lawful order . . . of a police officer", § 542.501. Such refusal, under the circumstances, could have reinforced an officer's reasonably believing Robbie Tolan to be a non-compliant and potentially threatening suspect. Robbie Tolan could have avoided injury by remaining prone as Officer Edwards, with pistol drawn, had ordered him to do. Instead, his shouting and abruptly attempting to approach Sergeant Cotton inflamed an already tense situation; in the light of his actions at the scene, a genuine dispute of material fact does not exist regarding whether Sergeant Cotton acted objectively unreasonably. *E.g., Deville*, 567 F.3d at 167; *Ontiveros*, 564 F.3d 379; *Young*, 775 F.2d 1349.

It goes without saying that this occurrence was tragic. But, the Officers' mistake of fact and Robbie Tolan's injury do not permit deviating from controlling law. Accordingly, and because Robbie Tolan has not shown a genuine dispute of material fact for whether Sergeant Cotton's shooting him was objectively unreasonable under clearly-established law, summary judgment based on qualified immunity was proper.

No. 12-20296

## B.

Marian Tolan contends the summary judgment for Sergeant Cotton was improper because a genuine dispute of material fact exists for whether her right to freedom from excessive force was violated by Sergeant Cotton's grabbing her arm and shoving her against the garage door. Viewing the summary judgment record in the light most favorable to her, Marian Tolan has not created a genuine issue of material fact on whether Sergeant Cotton's conduct was objectively unreasonable in the light of clearly-established law.

### 1.

For the reasons stated above, and because the undisputed, material facts show Sergeant Cotton is entitled to qualified immunity under the second prong of the qualified-immunity analysis, we need not decide the first prong.

### 2.

Officers have a clearly-established right to use "measured and ascending" responses to control volatile situations while in the discharge of their official duties. *Poole*, 691 F.3d at 629 (internal citation and quotation marks omitted). Marian Tolan likewise violated Texas Penal Code § 38.15 and Texas Transportation Code § 542.501 by refusing to remain calm and move to the garage door as Sergeant Cotton ordered, thereby, as provided in § 38.15, impeding his performing a duty imposed by law and, as provided in § 542.501, "refus[ing] to comply with [his] lawful order".

There is no genuine dispute of material fact that this is what happened. Sergeant Cotton first used voice commands in an attempt to gain Marian Tolan's compliance and to facilitate his securing and searching two felony suspects. *E.g.*, *Deville*, 567 F.3d at 167-68 (officers should attempt voice commands before resorting to physical force when circumstances permit). Those commands having proved ineffectual, Sergeant Cotton used minimal physical force to move Marian Tolan away from Officer Edwards' line of sight in an attempt to restore

14

No. 12-20296

order to a chaotic and confusing scene and to conduct the necessary investigation.

Accordingly, Sergeant Cotton's actions were not objectively unreasonable in the light of clearly-established law. Summary judgment based on qualified immunity was proper regarding Marian Tolan.

## III.

For the foregoing reasons, the Rule 54(b) judgment in favor of Sergeant Cotton is AFFIRMED.